UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>C and C Power Line, Inc.,<br><br>Defendant. | Civil Action No.<br>_____<br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful race-based and retaliatory employment practices and to provide appropriate relief to Charging Party  Gillis Carbin ("Mr. Carbin") who was adversely affected by such practices. As alleged with greater specificity below, C and C Power Line, Inc. ("C&C") subjected Mr. Carbin to a hostile work environment based on his race; denied him entry to crane school on the basis of race and/or in retaliation for complaining; and terminated him on the basis of race and/or in retaliation for complaining.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451,

1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     Venue is proper because a substantial part of the events giving rise to Title VII violations occurred in the Middle District of Florida.  Further, C&C terminated Mr. Carbin's employment in Jacksonville, Florida and C&C is located in Jacksonville, Florida, which is within the jurisdiction of the U.S. District Court for the Middle District of Florida, Jacksonville Division.

<u>PARTIES</u>

3.     Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission" of "the EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     Defendant C&C is registered to do business in Florida, has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

5.     At all relevant times, C&C has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b),

(g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

<u>CONDITIONS PRECEDENT</u>

6.      More than thirty days prior to the institution of this lawsuit, Mr. Carbin filed a Charge of Discrimination with the Commission alleging that C&C violated Title VII.

7.      The Commission issued a Letter of Determination, finding reasonable cause to believe that C&C discriminated against Mr. Carbin on the basis of race.

8.      Prior to initiating this lawsuit, the Commission attempted to correct the unlawful employment practices alleged herein through informal methods of conciliation, conference, and persuasion, to remedy the discriminatory practices and provide appropriate relief.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF FACTS</u>

10.      C&C is an Electrical construction and maintenance support services for the power and utility industry.

11.      Mr. Carbin started working for C&C in May 2017 as a substation apprentice employee on a substation crew.

12.      Beginning in February 2018, Mr. Carbin began reporting to Crew Forman Bill Peterson ("Peterson").  In turn, General Foreman Damien Shell

("Shell") oversaw all substation crews.

13.     In early 2018, Mr. Carbin began experiencing racial harassment on a daily basis at work.  Examples of the comments made to Mr. Carbin include, but are not limited to, the following:

a.  Co-worker Tommy Durston ("Durston") called Mr. Carbin the "N-word" and "boy" on a regular basis.

b.  Durston would tell Mr. Carbin to "turn that [N-word] music off" on a daily basis.

c.  Durston told Mr. Carbin that he could not use a communal pen until after the white crewmembers;

d.  Peterson referred to Mr. Carbin using the "N-word" and "boy";

e.  Mr. Carbin heard Peterson and other coworkers saying "White Power"

14.     In addition to making racial comments, Durston threatened Mr. Carbin with nooses; Peterson saw the nooses but did nothing to stop it.

15.     Mr. Carbin complained to Peterson and Shell about the harassment. In response, Shell told Mr. Carbin, among other comments, to stop complaining; to stop being "soft" and a "pussy."

16.     The harassment continued after Mr. Carbin complained.

17.     On approximately June 1, 2018, Peterson resigned as foreman and

C&C disbanded Mr. Carbin's crew. Mr. Carbin was transferred to another crew led by Foreman Chris Simmons.

18.     The harassment continued under Foreman Chris Simmons ("Simmons").  Examples of additional harassment include, but are not limited to, the following:

      a.  Simmons regularly referred to Charing Party as "black ass."

      b.  Simmons had a confederate flag bumper sticker on his work truck.

      c.  Simmons used the "N-Word" in front of Mr. Carbin.

      d.   Simmons ridiculed Mr. Carbin's gold teeth and told him that white people don't have gold teeth, that he shouldn't smile, and that his gold teeth would get him in trouble.

19.     Mr. Carbin again complained to Shell.  Mr. Carbin asked Shell if he was being set up to fail because he was black, which Shell denied.

20.     Eventually, C&C sent most of Mr. Carbin's crew to its Jacksonville, Florida headquarters location to attend crane school.  Shell told Mr. Carbin, however, that he would not attend crane school because he could not let "you people"—which Mr. Carbin understood to mean black people—operate cranes because they would use cranes to pick up cars off the road.

21.     At headquarters, Mike McGill ("McGill") was appointed to lead Mr. Carbin's crew where he experienced the following:

a. McGill assigned Mr. Carbin to menial tasks unrelated to his apprenticeship training, such as cleaning a storage shed, collecting trash, washing trucks, and raking;

b. Mr. Carbin heard McGill using the "N-Word" during his last week of employment.

c. Many of the employees at the Jacksonville headquarters had Confederate flag decals on their trucks.

22.    Eventually C&C stopped assigning Mr. Carbin any work at all. At that point, Shell and McGill instructed Mr. Carbin to "just find something to do" and "to stay out of sight." Mr. Carbin asked Shell why he was not being assigned work, to which Shell responded, "you know why."

23.    At the beginning of crane school, Mr. Carbin again confronted Shell about not being allowed to attend. Shell again explained that he could not let "you people" operate cranes. Notably, Mr. Carbin witnessed that none of the employees attending crane school were black individuals.

24.    Shortly thereafter, on August 22, 2018, C&C terminated Mr. Carbin's employment. That day, Mr. Carbin reported to work as usual and was not assigned any work. McGill told Mr. Carbin, in sum and substance, "we told you not to be seen."

25.    Sometime in the morning of August 22, 2018, it started to rain. Mr.

Carbin went to a company truck for cover. It was well known that Mr. Carbin sat

in this truck when there was no work for him to do. Mr. Carbin fell asleep in the

truck. He was awoken sometime before noon by Shell knocking on the window of

his truck. Shell told Mr. Carbin that C&C was terminating his employment for

sleeping on the job.

26.     White C&C employees regularly took rest breaks and/or slept in cars

and were not terminated.

27.     Because of C&C's unlawful conduct, Mr. Carbin was harmed and

suffered damages.

## STATEMENT OF CLAIMS

### Count I – Hostile Work Environment

28.     As set forth in paragraphs 13-27, Defendant engaged in unlawful

employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §

2000e-2(a)(1), by subjecting Mr. Carbin to a hostile work environment on the basis

of race, which culminated in Mr. Carbin's termination.

29.     The effect of the practices complained of in paragraphs 13-27 has

been to affect the terms and conditions of employment for Mr. Carbin, to deprive

him of equal employment opportunities and to otherwise adversely affect his status

as an employee because of his race.

30.     The unlawful employment practices complained of in paragraphs 13-

27 were intentional.

31.    The unlawful employment practices complained of in paragraphs 13-27 were done with malice or with reckless indifference to the federally protected rights of Mr. Carbin.

*Count II – Disparate Treatment -Termination*

32.    As set forth in paragraphs 13-27, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by terminating Mr. Carbin because of his race.

33.    The effect of the practices complained of in paragraphs 13-27 has been to affect the terms and conditions of employment for Mr. Carbin, to deprive him of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

34.    The unlawful employment practices complained of in paragraphs 13-27 were intentional.

35.    The unlawful employment practices complained of in paragraphs 13-27 were done with malice or with reckless indifference to the federally protected rights of Mr. Carbin.

*Count III- Retaliation- Termination*

36.    As set forth in paragraphs 13-27, Defendant engaged in unlawful employment practices, in violation of Section 704(a)(1) of Title VII, 42 U.S.C. §

2000e-3(a)(1), by terminating Mr. Carbin in retaliation for complaining about race discrimination.

37.     The effect of the practices complained of in paragraphs 13-27 has been to affect the terms and conditions of employment for Mr. Carbin, to deprive him of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

38.     The unlawful employment practices complained of in paragraphs 13-27 were intentional.

39.     The unlawful employment practices complained of in paragraphs 13-27 were done with malice or with reckless indifference to the federally protected rights of Mr. Carbin.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining C&C, its officers, agents, servants, managers, employees, and all persons in active concert or participation with them, from participating in discriminatory conduct based on race including, but not limited to, permitting a hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

B.     Order C&C to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees and which

9

eradicate the effects of its past and present unlawful employment practices;

C.   Order C&C to make Mr. Carbin whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of C&C's unlawful employment practices including but not limited to reinstatement and/or front pay;

D.   Order C&C to make Mr. Carbin whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

E.   Order C&C to pay Mr. Carbin punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

F.   Grant such further relief as the Court deems necessary and proper in the public interest; and

G.   Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Date: April 22, 2021          Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507


ROBERT E. WEISBERG
Regional Attorney
Florida Bar No. 285676

s/Kristen M. Foslid
KRISTEN M. FOSLID
Supervisory Trial Attorney
Florida Bar No. 0688681
U.S. Equal Employment
Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
(786) 648-5835